MICHAEL DESKOVICK, PLAINTIFF-APPELLANT, v. WATER POLICY AND SUPPLY COUNCIL, DEFENDANT-RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued September 27, 1977—Decided February 23, 1978.

Before Judges MATTHEWS, CRANE and ANTELL.

*Mr. Clifford W. Starrett* argued the cause for appellant (*Messrs. Schenck, Price, Smith & King,* attorneys).

*Mr. Ronald P. Heksch,* Deputy Attorney General, argued the cause for respondent (*Mr. William F. Hyland,* Attorney General, attorney; *Ms. Erminie L. Conley,* Deputy Attorney General, of counsel).

PER CURIAM. This is an appeal from a determination of the Water Policy and Supply Council (Council) denying the application of plaintiff Michael Deskovick for approval, under *N. J. S. A.* 58:1–26, of plans for construction of a sanitary landfill on portions of a 13.5-acre tract of land located along the Whippany River in East Hanover Township, Morris County.

On or about November 15, 1974 plaintiff made application to the Council for a stream encroachment permit that would allow him to conduct a landfill operation on the aforementioned premises. A permit was denied by letter dated April 3, 1975. The denial was predicated on the fact that the proposed landfill would result in fill being placed in an area that was prone to inundation by flood waters.

After receipt of the letter denying the permit plaintiff made a timely request for a hearing which was granted. The hearing was held on July 30, 1975 before a member of the Council. Plaintiff presented a written statement and witnesses. East Hanover Township and the East Hanover Environmental Commission, participating as objectors at the hearing, also presented witnesses.

On October 20, 1975 the hearing officer issued her "Report of Hearing and Recommendations." She recommended that plaintiff's application for a permit to use his property as a sanitary landfill operation be denied and, further, that fill be removed from certain areas theretofore filed by plaintiff without the Council's approval. Plaintiff filed exceptions and objections to the report. The full Council adopted the hearing officer's findings of fact, conclusions and recommendations, and advised plaintiff accordingly by letter dated January 19, 1976. This appeal followed.

The property which is the subject matter of this action is a 13.5-acre tract of land located on the northerly side of Klinger Road in the Township of East Hanover. A portion of the property is bounded by the Whippany River. The flood elevation of the property, based on historical data compiled by the State, is 176 feet. Portions of the property had previously been filled to as high as elevation 176 feet, without the approval of the Council. Plaintiff's present application seeks permission to fill approximately 3.55 acres heretofore relatively free of fill to elevation 176 feet. Approximately 36,500 cubic yards of material would be required. The 3.55 acres in question are presently below flood elevation 176 and would be almost entirely flooded during severe floods.

Evidence adduced during the hearing indicated that the proposed filling by plaintiff of the 3.55 acres in question would result in a decrease in the flood retention capacity in the area of the subject property. In addition, there was evidence showing that the fill placed on the property was causing sediments and debris to enter the Whippany River,

which otherwise would not be there. The Council concluded that if additional fill were allowed that condition would worsen.

The hearing officer in her "Report of Hearing and Recommendations" found that in fact the additional filling of plaintiff's land, as proposed, would result in a loss in flood retention which although a small loss if only the subject property was considered, would cause a major problem if other properties in the area were filled in a similar manner.

Plaintiff argues that the Council has no power to prohibit the filling of his land with inert material.

New Jersey's stream encroachment legislation is set forth in *N. J. S. A.* 58:1-26.[1] This statute provides, in pertinent part:

> No structure within the natural and ordinary high water mark of any stream shall be made by any * * * private person or corporation without notice to the commission, and in no case without complying with such conditions as the commission may prescribe for preserving the channel and providing for the flow of water therein to safeguard the public against danger from waters impounded or affected by such structure, * * *.[2]

---

[1] On December 14, 1972 New Jersey's flood hazard legislation became effective. *N. J. S. A.* 58:16A-50 *et seq.* That statute authorizes the Department of Environmental Protection to enact regulations governing land in "designated floodways" and, in certain instances, "flood fringe areas." The floodway regulations became effective on June 2, 1975. 7 *N. J. R.* 259. However, the Department has not, as yet, formally designated "floodways" in the Passaic River Basin where the property herein is located. Accordingly, *N. J. S. A.* 58:16A-50 *et seq.* and the regulations promulgated pursuant thereto are inoperative in the instant case.

[2] This statute was amended by *L.* 1975, *c.* 232, § 9, to include "alterations." Jurisdiction was changed from the "Commission" to the Department of Environmental Protection. The amendment became effective 60 days after October 23, 1975. However, § 12 provided: "Any application filed prior to the effective date of this act shall not be affected by the provisions of this act; provided, however, the applicant may elect to resubmit his application subsequent to the effective date hereof." This action proceeded under the act as unamended.

This statutory language requires the commission (now the Council) to undertake broad inquiry into all stream encroachment applications submitted to it.

Since plaintiff's landfill is arguably not a structure within the ordinary highwater mark of a stream and the Council's action is not designed to preserve the channel of a stream, he asks us to set aside the determination of the Council. We find merit in his argument, but not for the reasons he advances.

Speaking of predecessor laws creating the State Water Policy Commission, in *Jersey City v. State Water Policy Comm'n,* 118 *N. J. L.* 72 (E. & A. 1936), Justice Heher stated:

> This statute is, on well settled principles, to be liberally construed to advance its beneficent policy. While the [State Water Policy Commission's] jurisdiction is special and limited, *it possesses such powers as by fair implication and intendment are incident to the authority expressly granted for the attainment of the general legislative policy.* [at 76; emphasis supplied]

The court construed the language of what is now *N. J. S. A.* 58:1–26 to empower the Commission to consider the contamination of water impounded or affected by structures in a stream, even though the statute does not speak of potability, since the supply of clean and wholesome water was an outstanding objective of the statute.

[2] While it is apparent from *N. J. S. A.* 58:1–26 and related statutes (see, *e. g., N. J. S. A.* 58:1–11) that the Council is charged with flood prevention, we believe that more than incidental powers is required to justify the regulation of landfill not within the natural and ordinary high water marks of a stream under that statute. This conclusion is based not only upon our reading of *N. J. S. A.* 58:1–26 and related provisions, but also upon the express grant of such power by the Legislature to the Department of Environmental Protection pursuant to *N. J. S. A.* 58:16A–55:

> (a) The department is authorized to adopt, amend and repeal rules and regulations concerning the development and use of land.

in any designated floodway which shall be designed to preserve its flood carrying capacity and to minimize the threat to the public safety, health and general welfare.

(b) Provision may be made by the department for the waiver, according to definite criteria, of strict compliance with the rules and regulations, where necessary to alleviate hardship.

If the Legislature had intended to grant that power by implication under *N. J. S. A.* 58:1–26, we believe it to be unlikely that it would have enacted *N. J. S. A.* 58:16A–55. *N. J. S. A.* 58:1–26 is concerned only with the effect of structures (and now, alterations) within the high water marks of a stream on the normal flow of water in that stream. *N. J. S. A.* 58:16A–55, on the other hand, is clearly intended to provide a means of regulating the use of land in areas outside the high water marks of streams when the land has been designated a "floodway." See, *N. J. S. A.* 58:16A–51(d). We disagree with the State's contention that *N. J. S. A.* 58:1–26 also required the Commission, and now the Council, to take into account the effect the structure involved and similar structures may have on the flood capacity of the drainage basin as a whole. We express no opinion as to the effect, if any, the designation of the area as a "floodway" pursuant to *N. J. S. A.* 58:16A–50 *et seq.* might have had on this application since, as the Council admits, regulations promulgated pursuant to that law are inoperative here.

The Council also found that the *existing* landfill is a contributor of sediments and debris to the Whippany River, presumably because the material utilized could affect the river by changing the channel due to accretion of sediment on downstream banks or simply by the blocking effect of debris in the stream. We believe that an admittedly liberal but proper construction of *N. J. S. A.* 58:1–26 permits control of landfill in this respect. That part of the landfill which contributes such sediment and debris may be viewed as a

"structure."[3] within the high water of the stream, and to the extent that the existing landfill violates the statute or any *applicable* regulations thereunder, the Council may order removal or repair. The Council's findings, under review here, only apply to existing landfill. Whether any part of the proposed landfill will have any similar deleterious effects will have to be considered on remand.

In view of our disposition as set forth herein, we find it unnecessary to pass on the other arguments raised by plaintiff.

The determination of the Water Policy and Supply Council is reversed and the cause is remanded to the Council for a consideration of the effect the proposed landfill would have on the Whippany River, and also any modifications to the existing and proposed landfill which might be effected to remedy that problem. At the hearing to be conducted, plaintiff should be afforded the opportunity to propose modifications that might alleviate the problem of sediment and debris with regard to both the existing and proposed landfill.

We do not retain jurisdiction.